So you gentlemen are coming from the Galveston Mardi Gras to the New Orleans Mardi Gras. May it please the court, George Vye for the appellant, Matthew Wiggins. Mr. Wiggins is asking the court this morning to grant one of two alternative types of relief from this bankruptcy appeal. The first is he's asking the court, as his primary argument, to render judgment in his favor as to the award against him of trespass damages, because as a matter of law, he was not a trespasser, but was a mortgagee in possession. Why didn't he raise that? Well, I think he did raise it, and I understand the appellee suggests that it was waived. First, in the bankruptcy court, there was both testimony at one of the trials, and this would be at page 274 of the clerk's record. He testified that he had remained in possession under the 2009 deed of trust, which I'll talk about in a moment, notwithstanding the entry of the state court judgment. He testified that he was acting as a mortgagee in possession. The second is that in the motion to reconsider, which is at page 339 from the bankruptcy court judgment, counsel there had also set out the facts of the mortgagee in possession, and then, of course, the district court expressly considered the arguments about mortgagee in possession and rejected those on the merits, but clearly took up that argument and was briefed by both parties at the district court level. There was, I know the court's familiar with the facts, it arises from Mr. Wiggins' loan to Kelly in the amount of $400,000, and he subsequently foreclosed in January 2010. He then, a year later, he refinanced the property with a different bank for $1 million and paid off her debt, and that's one of the reasons that he's a mortgagee in possession, because otherwise she would have received the property back free and clear of any debt, including her own debt that she had undertaken with the bank. Mr. Wiggins extinguished that debt later by refinancing, and she sued him for wrongful foreclosure, breach of contract, fraud, breach of fiduciary duty, and a number of other things the next day, the day after he refinanced the property. She took him for a ride, and she took him to the cleaners. But there seems to be, on both the district court, the trial court, and the bankruptcy trustee, a misunderstanding about the underlying state court judgment, and I think the best evidence of that is page 965 of the record, which is the district court's recitation of facts, and this is throughout the record, this issue comes up. The court said, the district court said, the Galveston court found that the foreclosure was void as Wiggins and Kelly had not intended to bind themselves to any agreement that would support foreclosure, and that's a misreading of the underlying judgment. And what happened in the underlying judgment is that Ms. Kelly sued Mr. Wiggins for this She claimed They found there was no notice, but specifically preserved a $600,000 lien, right? Right, but there were other claims that she presented, and the first claim that's shown in the judgment, there's several copies of the judgment in the court's record, and they all skip from question 1 to question 8. Question 1, the first question was that whether Mr. Wiggins and Ms. Kelly had intended to One was that Mr. Wiggins was going to provide $400,000 to purchase and renovate the property. The second was that Ms. Kelly would be paid by Mr. Wiggins $5,000 a month to supervise renovations, and the third was that they together would share profits on a 60-40 basis. That submitted her claim that there had been an oral joint venture or an oral partnership in this case, and the jury found no. And the missing questions in the final judgment are all the questions that followed about who breached it first, was their breach excused, and what were the damages, and none of those were answered by the jury because they found that there was no partnership. Then in question 13, Ms. Kelly asked the jury, did I intend to reside on the property on the day I acquired it? And the reason she did that is because she claimed that the notice of foreclosure was defective, because if she resided at the property under the Texas property code, she was entitled to receive 20 days' notice, and she did not receive the 20 days' notice. And on that technical basis, the foreclosure was set aside. So the district court assumed, and the trust— But the judgment specifically preserved Mr. Wiggins' lien. It created a lien. It created a lien. And it preserved the prior lien that he had. That's where the district court erred, is that there's nothing in the judgment that extinguished his prior mortgage and deed of trust and the loan, and so it says in one part of the judgment that he has a $660,000 judgment for the amount the jury found for improvements, but that also there is remaining in place any other liens of record that were otherwise valid and existing on January 5, 2010, which remain outstanding at the time of judgment, which was his lien and deed of trust. And so we go back to this first question. Is Mr. Wiggins a trespasser, or is he a mortgagee in possession? If he's a trespasser, the court awarded damages. If he was a mortgagee in possession under Texas law, she wouldn't get the property back until she paid him the money he had advanced. In other words, yes, he had extinguished her debt to her lender, and she would not get it back free and clear as a mortgagee in possession. And the district court said, well, he can't be a mortgagee in possession because the jury found there was no agreement between them that would support this $400,000 loan, and that was incorrect. In the very first complaint that was filed by the bankruptcy trustee in the adversary action, and this is around clerk's record, page 48, the trustee said, I want to recover an accounting and damages from the date of the bankruptcy going forward. And in the answer at page 84 of the clerk's record, Mr. Wiggins said, your description of this underlying judgment is not accurate. It's wrong. He could see from the start that the trustee, like the district court, like the bankruptcy court, thought that Mr. Wiggins had loaned $400,000 and that there was no agreement, and so as a matter of law, he could not be a mortgagee in possession. May I, let me, I'm not an expert in Texas property law, but I do have some questions about how the trustee is able to pursue this action. A, I assume your liens were recorded? The first lien, the lien for the mortgage or the lien created by the judgment? Either one. Well, the lien created by the judgment is in the judgment, and the judgment's recorded. Does that supersede the Texas recording statutes? I don't know that it, I don't know that it supersedes it. The means by which it is enforced is you return to the trial court and ask for judicial foreclosure of that lien in an order of sale, which has occurred in this case. All right. So in any case, the trustee didn't try to avoid the lien under the bankruptcy law. No. Okay. Number one. Number two, this property was declared exempt. Yes. Subject to what? I assume as homestead? She filed a homestead exemption, and this was one of the quarrels in the district court. The question that was submitted to the jury was to establish residence so that she could get the benefit of the 20 days notice period. I don't care about ... And she claimed ... Just answer my questions. Yes, ma'am. Just follow me. You don't know where I'm going. Okay. She claims it is an exempt homestead. Yes. An unobjected to declaration of homestead takes the property out of the bankruptcy case. Right. That was our argument. I do not understand how she could have a deal with the trustee to have it both ways. A, it's exempt, and B, the trustee gets the money. I don't understand that. We complained about that fact, Your Honor. At page 1098 of the record is the stipulation that the trustee and the debtor made about the homestead. Well, it sounds to me like a totally unauthorized deal. I don't know whether you objected to it in the bankruptcy court or not, but I do not see how a trustee has a right to pursue a claim with regard to exempt property unless it's some kind of settlement of the claim of objection of the claim of exemption. I have never heard that, and I have some experience with the bankruptcy stuff. We complained about it and the impact of it because we were also being sued in the state court by Ms. Kelly who said she was entitled to recover damages for trespass with respect to the property. She claimed it was her homestead, a contested issue below, but she claimed in the bankruptcy court it was her homestead. No one objected. Then she, 13 months after the bankruptcy is filed, makes this stipulation that's at page 1098 of the record where she says my equity is capped in it, and the property had no equity. What do you mean? Yeah, how can she cap it when she's got no equity? Did she ever put a dime into it? She's never put a penny into it. That's what I mean. She's never paid the taxes which Mr. Wiggins paid, the flood insurance, the property insurance. He's paid everything on it. In fact, at the first trial on liability, and perhaps at the second trial, but at the first trial on liability, not only did she admit that she hadn't paid the taxes, she didn't even know how much they were. He was paying everything, and he extinguished her debt. What's the status of the property today? Does she occupy it? No, we went to the district court, we went to the state district court, and requested a judicial foreclosure of the lien because she hadn't paid the lien either. The court granted that and entered an order of sale. She filed two mandamuses to the court of appeals, one to the Texas Supreme Court, all of which were denied. She then filed a direct appeal as well, and that was dismissed for lack of jurisdiction and a published opinion because there was only one final judgment, and it was already executed. The point is that your client is in possession and is operating it as a bed and breakfast. Is not operating it, to my knowledge, but we foreclosed upon the property in January 2015. It never operated at a profit. They ended up abandoning the property in the bankruptcy, although they're claiming it's homestead and that. They ended up abandoning it because it had ... Abandoning it also says the trustee can't go forward with, so I mean that's ... Right. Let me ask you, suppose that we do not agree with your theory of mortgagee in possession. I still had a question. I have a lot of questions because I don't see ... I think the argument that Ray Ciuticata didn't bar any damages for trespass prior to the state judgment is quite facile. She had every ability in the state court case to say, he's occupying my land. I should get a judgment for the damages. Absolutely. They're using the judgment against us to say, on the one hand, it awards possession to her, ignoring the fact that we retain our lien in the property, that it's a technical defect of 20 days notice. It's not some, as the court said, it's not that there's some absence of an agreement and that he just gave her $400,000. Then the other deal I don't see is how they get damages after she claimed the property was exempt because, as I said, it's exempt. It's hers. Right.  Right. Right. We had both arguments. The Ray Ciuticata, we believe, is supported by the pleading. The affirmative defense was pled in the answer. There were 29 months of the 49 months that were prior to the state court judgment. Clearly, Ms. Kelly, when she was suing us in the state court ... They make it sound as if she won. She lost on everything. She's suing us for fraud. There was no fraud. She sued us for breach of fiduciary and there was none. She sued us for an oral partnership with respect to this property. The jury rejected that. Each side got competing declaratory judgment attorneys fees of $50,000 and then we set aside the foreclosure on a technicality of 20 days notice. We get our lien for the amount the jury found that we'd reasonably expended on the property of $660,000. She easily could have said, in addition to that, I'm suing from the date of the foreclosure until the date that this case goes to trial because you've been trespassing. The exact same thing that the trustee is suing us for here. The trustee in her complaint said she was only going forward. She said, I want damages for possession from going forward. The court's right as well that there's a 13-month period before they enter into this stipulation. She claims it's her homestead. It's not objected to. 13 months later, they make this stipulation. She leaves the bankruptcy court. She's discharged. She goes to state court and starts to sue us to recover damages under other theories. So we believe that race judicata does apply. Clearly there's identical parties. It came from a court of competent jurisdiction, the underlying judgment. The prior action was concluded with a judgment on the merits, a full-blown trial. And they were the same claims in both suits. The only distinction would be that the trustee is different than Kelly. For this purpose, the trustee is not different than Kelly. She had the opportunity to sue for 29 months of alleged trespass damages. And those should be, we would argue, either rendered out if the court renders a judgment or remanded back for those. But the amount is undisputed in terms of how it was presented to the court. It was $4,000 a month. That was the number that the court selected. So that's 29 months. The award for the period of time that she claims it's her homestead would be another 13 months. And that the judgment of $159,000 or so against him should be resolved and either remanded or rendered to reflect that. But we do think that the record as a matter of law establishes that he's a mortgagee in possession, that that argument was preserved, that the courts misunderstood the underlying judgment, but that the actual judgment does support Mr. Wiggins being a mortgagee in possession. All right. Thank you, sir. Thank you. Mr. Patterson. May it please the court, Johnny Patterson here on behalf of Ms. Northrup, who's the Chapter 7 trustee. And I guess the interesting part of this case is since we've left the bankruptcy court, we've kind of also left the record. We're coming, we're adding new theories, we're bringing in new facts. But if we stick to the record, this is a much simpler case. And the facts aren't as they seem as they developed here on appeal. And I think it's important to go back, because a lot's been made of it, to the final judgment in state court. And that's in the record at 1167, probably the best copy of that. And because Mr. Wiggins, a lot of his argument is based upon going back to the state court. Now I'll tell you, the record doesn't reflect what the claims were in state court. The record doesn't reflect what the jury declined to order. It doesn't reflect on what basis the state court ruled. I mean, we know, I mean, as judges here and lawyers, we don't go behind a judgment and say, well, why did he rule unless he put it in the judgment? We don't know those things. Mr. Wiggins wants to argue those things about why the judgment was entered or what the judgment means. But we all have the judgment. And so that's what the bankruptcy court used. That's what the Chapter 7 trustee utilized in pursuing her causes of action. The state court judgment says several things, and I'm just going to read from the record, and this is from 1170. The foreclosure conducted on January 5th, 2010 is void, and that title did not pass from Plaintiff Amelia Kelly to Defendant Matthew Wiggins, and all right, title, and interest of Matthew D. Wiggins, Jr. in and to the property remains vested in Plaintiff Amelia Kelly. That's the words right out of the judgment. It goes on to say, it's ordered to judge and decreed that the subject property is free and clear of any liens and claims of any party to this cause, including Mr. Wiggins, is free and clear of any claim or cause subject only to, number one, a lien against the property created by this judgment in favor of Defendant Matthew D. Wiggins in the amount of $660,000 found by the jury for the purchase, preservation, and improvement of the property. This deed of trust doesn't exist anymore. It's gone. Well, it's got substituted with a judgment lien. That's correct, and it's completely two different kinds of liens with completely different remedies and rights, completely different. One was created when this judgment was entered. So you're saying he has less rights after the judgment than he did before the judgment? No, the judgment tells us what rights he had before the judgment, and that was zero, right? He wants you to believe that he had these deed of trust rights. What's your Betz-Texas case for that proposition? It's not a proposition of law, Your Honor. It's a fact. The court said he had no claim, and he was given a judgment lien of $660,000. He says that the reason that the foreclosure was set aside was this notice. Find that in the judgment. Find that in the record. It's not in the record. You're saying, well, I saw the state court findings. We got them somewhere. That's what I'm reading from, Your Honor. No, sir. I had seen something that had question number one and question number 13. That's the judgment. The judge replicated those things in the final judgment. Okay. And there is no finding that this foreclosure was void because of some notice or some homestead. That's not what the judgment says. To me, there was, well, I thought I saw something that looked official about that, but. Well, and that's what Mr. Wiggins wants you to believe, but it's not in the record. It's not in the bankruptcy court record. It didn't come up at trial. Okay. All right? All right. Yep. I represented Ms. Northrup from the beginning until now. Okay. Well, now let me get to this other question. How in the heck does Ms. Northrup have the right to sue for damages owed to the debtor on exempt property? Because the property, and we cited in our case Suave Riley. And as you know, exemptions have become a rather complicated area. They're not that complicated because once the property is out of the bankruptcy court, it's out of the bankruptcy court. Well, and that's what. At the very least, it seems to me that negates 13 months of your judgment because it was out of the bankruptcy court. And if he was wrongfully possessing the property after it had been declared exempt without contradiction in the bankruptcy court, you have no right to at least 13 months of your judgment. I understand, but this is why, and this is why I talked about Suave Riley. Exemptions under the bankruptcy code really can follow two different paths, and it does get a little bit complicated. And Suave Riley talks about this distinction, about whether an exemption is to an interest in the property itself. For example, if there's an unlimited exemption, there's not a cap on value, and you're allowed to exempt your car. And I'm making this up, all right, for purposes of the example. The Supreme Court says, if I exempt that car, that car itself may then leave the estate, if I can finish, Your Honor. However, if the exemption talks about that you may exempt up to $5,000 in value of a car or other personal property, and I list $5,000, the Supreme Court has told us that that car doesn't leave the estate. That by listing the $5,000, the debtor is putting everyone on notice that $5,000 of that car, value of that car, she's claim is exempt, so when it's liquidated, that $5,000 comes to her. So if that car is worth- But there are two problems there. Number one, the Texas homestead is absolute, unequivocal, and unlimited. That's right. Number two, there is no reason, there is no rational reason for anybody, therefore, to cap their homestead equity. Other than the bankruptcy code, Your Honor. Excuse me. I have never seen, have you ever seen this before? Absolutely, Your Honor. So what was it? Was the trustee saying, I'm going to challenge this exemption unless you'll give me X claim? No, Your Honor. If I can finish, it's statutory. I don't do it. BACA, when the bankruptcy code was amended, added a provision that modifies, it modifies a debtor's ability to exempt a homestead in the state of Texas or any state if you're utilizing state exemptions. And it's 522P. And what it does, it converts that interest that I talked about, that car.  Talk about houses. Talk about the facts, please. All right. If I have an unlimited exemption on a house, and I exempt the house, the house leaves. However, if the bankruptcy code says you may exempt X dollars of the house, what the Supreme Court tells us in Swab v. Riley is, then it doesn't leave, that exemption is as to that value. And 522P1 does exactly that. That's what the statute says. 522P says, except as provided in paragraph 2 of this subsection and sections 544 and 548, which are relevant here, as a result of electing under subsection B3A, which is my right to exempt under the state law instead of the federal law, as a result of electing, I'm going to say state law exemptions, or to exempt property under state or local law, the debtor may not exempt any amount of interest that was acquired by the debtor during the 1,215-day period preceding the date of the filing of the petition that exceeds in the aggregate, and at the time, $146,450 in value. What the court has said, and what the statute says, is it modifies that state exemption scheme. And so the debtor no longer has that right to just take unlimited value of real property as a homestead out of the estate. I still don't understand how could your, her entire value, whatever it was, was subject to valid liens. She had no equity. Well, we know now that they were valid liens, Your Honor. We didn't know when the adversary was filed, when the litigation was filed, because one of the allegations He paid off a million-dollar loan on the house. You're saying that was voided? No, he didn't pay off a million-dollar lien. He cashed out $250,000 of this property. And he had a $600,000 judicial lien. And he placed a million on it to try to keep it from the court's reach. He wanted to fully encumber it. He put a million-dollar lien on it and cashed out $300,000. So he could then stand up and say, hey, well, this property is fully encumbered. I didn't see that anywhere in the briefs. It's in the record, because it doesn't go to any of the legal issues, Your Honor. And that's why he's raising it, and I'm just responding. It doesn't have anything to do with the issues. All right? And so the bankruptcy code limits it. The debtor acknowledged when the Chapter 7 trustee became involved, she acknowledged that her interest that was acquired under this code, that it was capped. That's why she entered into the stipulation with the trustee, which is at Record 776. It's a stipulation in lieu of the trustee having to object or sue her for the value of that exemption. And so she stipulated, just as she has the right to do under the rules, she can amend her exemptions whenever she wants. And you can look at it that way, that she amended her exemptions. But she stipulated in the face of the trustee confronting her with 522P and the cap, because we believed at the time that there was equity and that one of the liens was invalid. And you'll see in the complaint that was filed, and an issue that was tried, is that based upon the language of the state court judgment, that Mr. Wiggins never had an interest in this property. And that's what the state court judgment said. He had no interest until he was granted a judgment lien in the judgment that he didn't have the authority to grant that million-dollar lien. And there is authority for that. The judge didn't buy that argument from us. But there's state court authority that since he didn't have a right or an interest in that property, he couldn't give Texas citizens a lien on the property. And so that was one of the claims. And that's why we dealt with the exemptions before the adversary to try to make it clear that if we were successful, her interest was capped at 146 per the bankruptcy code, per the Supreme Court in Schwab v. Riley. Who gets the money from the judgment here? The Chapter 7 estate and the creditors of Ms. Kelly. She doesn't get any of the money. By the stipulation... Where's her 146? I'm sorry? Where's her 146? The property was abandoned because the lien in it was encumbered, and this was a claim that flowed from that property. If the property is abandoned, that means it has no value. It doesn't mean it has no value. It has no equity for the trustee and the estate. It may have some equity but not enough for the administrative cost. That's correct. And the timing is important. Abandonment was much later after the adversary proceeding and after the judgment. It was already exempt. How can you abandon it? Your Honor, the exemption was capped at 146. She had a dollar interest in this property. The asset wasn't exempt. Ms. Kelly seems to be a lady with an eye on the prize. I don't see why she would have ever given up that exemption. I don't represent Ms. Kelly, and I don't know what her motivations were. She wasn't a party to the litigation, and there's no evidence. So I don't know. I don't know other than when confronted with what the statute says and the facts of the case, I think she realized that she was subject to the cap. How many creditors are there? How many claims are there in the case? A dozen. I don't know off the top of my head, and it's not in the record. It wasn't part of the litigation. It's not an indication, so don't take that as it's just not in the record. Well, let's go back a step because, you know, if he is not a mortgagee in possession, and as I said, I don't claim to be an expert in title law, but if he is not a mortgagee in possession, it still looked highly dubious to me. In fact, not likely that the trustee could recover rent during the period that the property was exempt. And it also appeared to me that race judicata would have barred any claim of trespass prior to that judgment. Right. Well, take them one at a time. And one thing I want to add to the mortgagee in possession, number one, you won't find that phrase until there's a supplement or a motion for reconsideration. It's not in the answer. It wasn't pled. It wasn't argued. The district court dealt with it, correct? The district court addressed it. Yes, so we're up here on what the district court decided. No, this court considers what the bankruptcy court decided with some ‑‑I think you can look and see what they do, but you're reviewing what the bankruptcy court has done. I understand that, sir. Okay. And so I don't think what they raised for the ‑‑ I'm not convinced of your waiver argument, but go on. Well, if I can get to my final point, they're barred as well, and it's much more clear that they're barred from this mortgagee in possession. They're arguing that they were allowed to be in possession. We'll go back to the state court judgment. Possession was determined in that case. The state court determined who had the right to possession, and Mr. Wiggins was a party to that litigation, and he didn't raise it there, and if he did, it was denied, because they ruled that Ms. Kelly was entitled to possession, and she was entitled to any writ in which she would request in order to take possession. And so possession was determined way back in 2010 when Mr. Wiggins was a party to the litigation, and he should have raised it then if he was entitled to it, and we don't know that he didn't. Maybe he did and he lost because it's not in the record, but now he's bringing it up five years later to say, oh, I defied that state court order because there's this other theory in which I could defy that judge and not give up possession and stay in possession and rent it out. I mean, he's a glorified squatter is what he was when the court said ‑‑ Well, if that had been the case, she would have immediately gone to forcible entry and detain her, and instead a few months later she files bankruptcy, right? No, not necessarily. I don't know her financial situation. I didn't represent her. I don't know how sophisticated she was, and I can't presume that she would have gone right to known, oh, now I need to go to JP court and get a forcible entry and detain her. That's number one. I'm not going to think for her, Your Honor. All I know is what did happen. I know what did happen is the state court in Galveston County said, Mr. Wiggins, you're not entitled to possession. Ms. Kelly is. Mr. Wiggins, you have no interest in this property. Ms. Kelly does. It's hers in fee simple. He says that in simple words, plain and simple. Mr. Wiggins, you have no lien on this property other than this judgment I'm giving you. Going forward. And what's Mr. Wiggins' response? I don't care. I'm going to stay in possession. There's a bankruptcy file. Trustee says, please turn over possession. He says, no, I'm not going to. I get a judgment against him for possession. And what is his response? No, I'm going to wait. You know when he finally turned over possession? One day before trial on damages. That was after the opinion and order from the bankruptcy court that he was required to turn over possession. He still thumbed his nose. How long was that after the property became exempt? The property didn't become exempt, Your Honor. There was a value of $146,450 in the property. That doesn't mean that the trustee has the right to assert possession rights. It does. It does mean that, Your Honor. And that's what the bankruptcy. No, the trustee is asserting solely a cause of action for damages for trespass. Ms. Kelly could have gone in at any. That's. It is Ms. Kelly who owned it. It is Ms. Kelly who continued to own it after it's declared exempt. 541. She had. No. I just respectfully disagree with you, Your Honor. That's just a misreading of 541. Schwab v. Reilly. And whether a cause of action is a separate asset and property of the estate. They're not the same. The cause of action might have been the property of the estate. By the time you were going out for damages, the property was no longer in the estate. It was exempt. And I just disagree with you, Your Honor. Schwab v. Reilly tells us. All right. That it doesn't leave that that value, that claim of value into the estate remains until that property. The facts of Schwab v. Reilly. I have a claim up to, you know, above the 146,000 that's the exemption cap. The trustee. I'm sorry. I didn't follow you on that one. Never mind. Okay. And we just disagree, Your Honor. And I think that because the facts of Schwab v. Reilly I think are telling. The debtor in that case ran a catering business and listed all of her equipment. And I don't remember the dollars. My equipment is worth $5,000. And she took the federal exemptions which allowed her to exempt the property up to $5,000. And that's what she put on her schedules. No one objected to her exemptions. And the trustee went to sell her property when the trustee found out later that her property was worth $10,000. Again, I'm making up the numbers. But more than the exemption. And she said, Wait a minute. You never objected to my exemption. My property left the estate. You can't touch it. And the U.S. Supreme Court says, No, that's not exactly what happens. You don't have to object when that's the case. When we're talking about value and you haven't objected to the asset itself to take the asset out. You don't have to object. It remains because that was the argument. That the trustee, the Chapter 7 trustee, didn't object to the exemptions and then moved to sell later. Much after 30 more days after the creditors meeting. And the Supreme Court says, That's the way it works. Because this exemption speaks in terms of value of the property that's exempt and not the property itself with unlimited value. And therefore, the property doesn't leave. That that exemption claim just puts the world on notice. And then even a year later, if the trustee finds out that property is worth $50,000, can sell that property. And the $5,000 goes to the debtor. And that's the way the system works. And that's the way it worked here. Is the cap was on a dollar amount. Therefore, the property did not leave the estate. And I'll say that the bankruptcy court also ruled that way. And the district court. And the issue wasn't raised. This issue also wasn't raised. We're here on a bunch of issues that pop up for the first time after the record's created. To me, it went to the standing of the trustee to raise it. And standing, as you know, is a jurisdictional issue. That's correct. And I would also refer the court back to the recent exemption opinions of this court. When homesteads, Texas homesteads are sold even after a discharge. And proceeds are not reinvested. The bankruptcy courts have been held that those proceeds, if they're not reinvested, are property of the estate. Even though the exemption's been allowed later. And I can get you the sites to those cases if the court is interested. But those also talk about whether property actually leaves the estate or not. Thank you, Your Honor. All right, thank you. We have your argument. You didn't file a reply brief here, nor were you required to. But that also means you didn't make any response to the argument regarding Schwab v. Riley. Would you respond to opposing counsel's presentation on that? Yes. I would have to do that by letter brief, Your Honor, I think, to be most accurate about the holding on the case. Going back to the stipulation that was made and the argument about the stipulation, again, that's at page 1098 of the record. And it was entered into in January 2013. The record and the argument was that I was referring to things that were not in the record about or that there was no evidence in the record about the reason for the foreclosure being set aside and that being the 20 days notice. So the record shows that they make this stipulation on January 2013. And then the record shows at page 1434 that the next month Ms. Kelly sued Mr. Wiggins again in state court in Galveston on February of 2013. And this is the petition in which she says, and we've cited it at page 20 of our brief, that the property had been wrongfully foreclosed on because the proper notice had not been given. And she says that at page 1435. And at page 1437 she refers to the state court suit with the 20-day right to cure, which had been adjudicated in the prior lawsuit in her favor. The other thing about this petition, which she files a month after she enters into this stipulation about the homestead, is she turns around and sues us for trespass damages. And that's her first cause of action. It's at page 1438 of the record. And that was one of the complaints we had about this is that we pled race judicata. It's in the answer. We argued that the trustee is suing us for the same thing that she could have sued us for. In fact, the trustee was suing us for the same thing she is suing us for. They're both suing us for trespass, and that's in the record. And the argument was she could have done it before. She didn't do it before. The trustee can't do it now. There's nothing about this agreement they made. There's nothing about the law that would permit the property to leave the bankruptcy estate as being exempt, to have the property abandoned because it had no value. The trustee admitted there was no money to operate the bed and breakfast. There's no money to pay the flood insurance. There's no money to pay the taxes. There's no money to upkeep it. It operates at a loss. The property leaves the bankruptcy estate, but the trustee says that she can still sue for damages. Her complaint limits the damages to the initiation of the bankruptcy proceeding, but the judgment gives them another 20-something months before the bankruptcy is ever filed that nobody raised before, could have raised before. I understand we're arguing about this underlying state court judgment, but it's clear that there was a question in that state court judgment that submitted whether she had resided on the property, and she says in other pleadings that's because I was entitled to 20 days' notice if that was true. Mr. Wiggins couldn't be faulted for not giving notice that she claimed she was entitled to as a resident when she had never claimed it as her residence. That was one of the issues litigated in the state court trial. That was jury answer number 13. Was there what evidence of that being litigated was before the bankruptcy court in this matter? Well, in other words, they had the judgment. Everybody talked about question 13. The argument was that it was the reliance upon the property code provision. She, to the extent that she was in the bankruptcy proceedings before she left, she was arguing it was her homestead. She filed it as exempt as her homestead. But my point is just chronologically, and I think that's the reason the bankruptcy court wouldn't award punitive damages against Mr. Wiggins for trespass. He couldn't have anticipated she was going to claim that this bed and breakfast was her residence, and he makes a loan to her for her to develop it, and she never does. Never pays a penny on it, and then comes in and gets a jury finding that she intended. Not that she did. Jury question 13 is I intended to reside at the property back then, and then she uses that to claim homestead. In the trial, she used it to claim notice and that the notice was lacking. The other thing is that the court's judgment says that the property counsel read it to you, but he stopped with number one. There's three things in the judgment. It says the subject property is free and clear of any liens and claims of any party to this cause subject to one. The lien that was created in this judgment because the jury found that Mr. Wiggins had spent over $600,000 of his money fixing up and maintaining the property, and the jury found that that was appropriate, and so the court grants the judicial lien in there for $660,000. But then it says two, any other liens of record that are otherwise valid and existing on January 5, 2010, which remain outstanding at the time of the judgment. That's in the court's judgment for a reason. It's there because if there are any other judgments or liens of record, including his deed of trust for $400,000, it remains of record. It survives. It was not extinguished. Three, the reimbursement rights of Mr. Wiggins for property taxes that had been paid since the verdict. It was all about preserving his interest in a property that he had spent all the money on and that was being set aside, a foreclosure, on a lack of 20 days' notice. And the court put every protection in that judgment for Mr. Wiggins that it could, based on jury findings and based on law. And he— Well, you know, your red light's on. Red light's on. Thank you, Your Honor. Okay, thank you very much.